DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court upon the state of Ohio's appeal from the Sandusky County Court of Common Pleas, which suppressed evidence gained as a result of an investigatory stop of appellee's motor vehicle. Pursuant to 6th Dist.Loc.App.R. 12(B), we remove this case from our accelerated calendar, and for the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} Appellee, Jeffrey T. Clark, was charged with possession of cocaine and possession of criminal tools following an admittedly pretextual traffic stop in Fremont, Ohio. The trial court suppressed the evidence gained as a result of the stop, and appellant, the state of Ohio, appeals. Appellant contends that the police officers had a lawful basis to stop appellee; thus, the evidence gained as a result of the stop should not have been suppressed.
 {¶ 3} On March 13, 2003, the Fremont Police Department received information from the Bureau of Criminal Identification and Investigation ("BCI") that a gray Dodge pickup truck bearing a certain license plate would be entering their jurisdiction with a large amount of cocaine. While on the look-out for this truck, Fremont Police Officer Kevin Armbruster saw a truck matching the description pass him. Armbruster turned his police cruiser around to follow the vehicle. At some point, Fremont Police Officer Lester Daniels, who was traveling in the vicinity in an unmarked car with a BCI agent, fell in directly behind the pickup. Officer Armbruster was then directly behind Daniels. Armbruster freely admitted that they were waiting for appellee to commit a traffic violation so they could justify stopping him. After appellee turned a corner, Daniels saw him go left-of-center and radioed this fact to Armbruster. Armbruster then stopped appellee's vehicle. The left-of-center violation was the subject of some discussion at the hearing. Armbruster testified that Daniels told him that appellee went left of center as appellee was making the turn. On cross-examination, Armbruster corrected defense counsel, who characterized the violation as a "wide turn," specifying that Daniels indicated that appellant went "left of center." Daniels testified that appellee made the turn and was about 50 feet away from the intersection when he crossed the line. Appellee, however, testified that when Armbruster stopped him, he told appellee that he was stopping him for making a "wide turn."
 {¶ 4} Once the car was stopped, Officer Kenneth Buchele of the Fremont Police Department arrived to back up the other officers. Buchele is a certified K-9 handler, and he had his dog "Lord" with him. Buchele walked Lord around the car and Lord indicated for the presence of drugs. According to Buchele, Lord indicated on both sides of the truck. Buchele testified:
 {¶ 5} "He actually hit on both sides of the vehicle. I believe the first time he hit on the passenger's side, near the area between the pickup truck bed and the door to the passenger's cab area. And then he continued on around to the other side of the vehicle and I believe he hit on the door on that side."
 {¶ 6} After Lord indicated for the presence of drugs, the officers searched the car and discovered bags of cocaine weighing .01 and .02 grams.
 {¶ 7} Appellee moved to suppress the evidence gained from the stop, arguing that the officers had no reasonable suspicion to stop his car given that he committed only a de minimus drifting into the other lane of traffic. The trial court held a hearing on the motion and later granted it. In its decision, the court noted that pretextual stops may be constitutional, that the law permits an officer who has not seen a violation to stop a car based on radio information from another officer who observes the violation, that a traffic stop is permissible for even minor traffic violations, and that drug dogs may be used to detect the presence of narcotics "so long as their use is limited in scope and duration." Troubling to the court, however, was that all of these things (the pretextual stop, the radio information, the minor traffic offense, and the drug dog) came together as a means to justify the stop and the search. The court stated:
 {¶ 8} "The problem in this case, however, is all of these things occurred at once to effectuate this stop and arrest: 1) the stop was blatantly pretextual; 2) the officer did not observe any wrongdoing but relied on radio information of a minor traffic violation; 3) Officer Armbruster stopped the vehicle for going left of center during defendant's right turn, which, according to Officer Daniel's testimony, had been properly made; 4) the canine dog was used and alerted to the wrong area of the vehicle; 5) the substance that was seized was in the nature of residue."
 {¶ 9} Later in the decision, the trial court stated:
 {¶ 10} "The search and subsequent seizure were unreasonable if, for no other reason than, defendant was technically stopped for going left of center as he made a right turn when, in fact, that turn was proper according to the officer who witnessed it."
 {¶ 11} Appellant now appeals the trial court's grant of appellee's motion to suppress, setting forth the following assignment of error for our review:
 {¶ 12} "I. The Trial Court erred by granting appellee's motion to suppress
 {¶ 13} "A. The Trial Court erroneously found and relied upon certain facts not supported by the testimony
 {¶ 14} "B. The Trial Court erred by improperly considering the subjective motivations of the officers despite a reasonable and articulable suspicion based on a traffic violation
 {¶ 15} "C. The Trial Court erred by holding that one officer may not rely on the radio broadcast of another to stop a vehicle
 {¶ 16} "D. The Trial Court erred in holding that police cannot search a vehicle after a drug dog has alerted for the presence of drugs
 {¶ 17} "E. The trial court erred by considering the amount of the drug involved in evaluating the validity of the stop[.]"
 {¶ 18} Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. State v. Davis
(1999), 133 Ohio App.3d 114, 117. Since a trial court deciding the motion to suppress acts as a factfinder, an appellate court must accept the trial court's findings of fact as true if supported by competent, credible evidence. State v. Kobi
(1997), 122 Ohio App.3d 160, 167-168, discretionary appeal not allowed (1997), 80 Ohio St.3d 1466. However, an appellate court reviews de novo the trial court's application of the law to the facts. Id.
 {¶ 19} With regard to the trial court's findings of fact, we find one fact not to be supported by competent, credible evidence. The trial court found that the dog alerted to the wrong area of the truck. In fact, the uncontroverted testimony was that the dog alerted to both sides of the truck; Buchele testified that the dog indicated on the passenger side between the door and the bed and on the driver's side near the door. The drugs were found in the cab. Appellant also contends that the trial court erred in finding that the left-of-center violation occurred during the turn when, in fact, the violation occurred some 50 feet away from the intersection, well after the turn was completed. We cannot say that the trial court's finding on this point was not supported by competent, credible evidence. Though Daniels was clear in his testimony that the violation occurred well after the turn was completed, Armbruster testified that Daniels told him that appellee went left of center "as the truck turned from State Street to Buchanan." Further, appellee testified that Armbruster told him that the reason for the stop was a wide turn. In any event, the trial court appeared to acknowledge that appellee, at some point, traveled left of center and that this constituted a traffic violation, albeit a minor one.
 {¶ 20} With regard to its conclusions of law, the trial court found nothing unconstitutional about the stop except that the stop was cobbled together by several constitutionally questionable (to the trial court) events: a pretextual stop, a second-hand report of the violation, and a minor traffic offense, coupled with a yield of just a small amount of cocaine. Certainly, we must look at the totality of the circumstances to determine whether the officers had reasonable suspicion to stop appellee, Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299; however, we are unaware of any law holding that an otherwise constitutional stop can somehow be made unconstitutional because the stop, viewed in its totality, pushed the "envelope of what is permissible under the Fourth Amendment," to use the trial court's words.[1] Nevertheless, since the trial court expressed concern about the minor traffic offense and whether the offense created reasonable suspicion to make the stop, we shall address that question separately.
 {¶ 21} The trial court acknowledged that minor traffic offenses can lawfully form the basis for a Terry-type stop. SeeTerry v. Ohio (1968), 392 U.S. 1. In this case, appellee was stopped when he went left of center, a violation of R.C. 4511.33. At times material to this case, that section provided:
 {¶ 22} "(A) A vehicle or trackless trolley shall be driven, as nearly as practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 23} Earlier Ohio cases held that minor weaving over a lane line with no evidence to show how long or how far the driver so traveled would not in itself justify a stop, particularly when no other traffic is present and the driver was not speeding or otherwise driving erratically. See, e.g., State v. Drogi
(1994), 96 Ohio App.3d 466, 469; State v. Gullet (1992),78 Ohio App.3d 138, 145. However, subsequent cases from the United States Supreme Court and the Ohio Supreme Court called this line of cases into question. The U.S. Supreme Court in Whren v.United States (1996), 517 U.S. 806, and the Ohio Supreme Court in Dayton v. Erickson (1996), 76 Ohio St.3d 3, paragraph one of the syllabus, both held that any violation of the law justifies stopping a vehicle regardless of the officer's subjective reasons for doing so. Both courts eschewed the "reasonable officer" test for justifying traffic stops, which focuses on whether a reasonable officer would have stopped the vehicle for the violation in question. Instead, both courts embraced an objective "could" test (the name used by the Ohio Supreme Court inErickson), which focuses on whether any police officer could
lawfully stop the car. Id. at 11-12; Whren, 517 U.S. 818. In fact, the Ohio Supreme Court concluded that:
 {¶ 24} "where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." (Emphasis added.) Erickson, 76 Ohio St.3d at 11-12.
 {¶ 25} Since Erickson, Ohio appellate courts have similarly held that any minor traffic offense justifies stopping the driver. See, e.g., State v. Hodge, 2002-Ohio-3052,147 Ohio App.3d 550, at ¶ 27 (overruling Drogi) and cases cited therein.Hodge, like the instant case, also involved a violation of R.C.4511.33. Criticizing its previous cases in which it tried to discern, on a case-by-case basis, whether drifting out a lane was substantial enough to justify stopping a car, the court inHodge stated:
 {¶ 26} "In each instance we are in effect second-guessing whether a violation rose to the level of being `enough' of a violation for reasonable suspicion to make the stop. Pursuant toWhren and Erickson, we must recognize that a violation of the law is exactly that — a violation. Trial courts determine whether any violation occurred, not the extent of the violation. Based upon the foregoing analysis, we explicitly overruleDrogi, as it is contrary to the subsequent decisions of Whren
and Erickson." (Emphasis in original.) Id.
 {¶ 27} This court has also held that even minor traffic violations provide reasonable suspicion to stop a car. See Statev. Purcell (Feb. 27, 1998), Erie App. No. E-97-056 (two instances of minor weaving outside lane); State v. Deichler
(May 23, 1997), Erie App. No. E-96-091 (one instance of minor weaving outside lane). We therefore find that the stop in this case was based on reasonable suspicion and was thus constitutionally valid.
 {¶ 28} Appellee appears to agree that even a minor traffic violation can give rise to a valid stop; however, he argues that in this case there was no violation at all. According to appellee, the statute only requires that a driver stay in a marked lane "as nearly as practicable." Appellee testified at the hearing that he drove out of the marked lane to avoid ruts in the road caused by sewer covers or drains. (Officer Daniels, however, testified that this street is "decently paved" and without "ruts or anything like that.") We need not decide whether appellee was justified in driving outside the marked lane; we only need to decide whether the officers, upon seeing appellee drive outside the lane, had reasonable suspicion to stop him. We conclude that they did. For all of the foregoing reasons, we find appellant's assignment of error well-taken.
 {¶ 29} Upon due consideration, we find appellant's assignment of error well-taken, and the decision of the Sandusky County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision. Appellee is ordered to pay the court costs of this appeal.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Pietrykowski, J., Lanzinger, J., Concur.
[1] The United States Supreme Court has, in fact, held that, although a "reasonableness" test relies on balancing, that balancing is not done where the search or seizure is done with probable cause (or, by logical extension, reasonable suspicion). See Whren v. United States (1996), 517 U.S. 806, 817. The only time that such balancing is required is for the types of seizures that a priori do not involve probable cause or another justification for the intrusion, such as random stops, inventory searches, and administrative inspections. Id. However, where a driver is violating a traffic law, that in itself provides justification for the stop, and no further balancing is required, unless the search or seizure was conducted in an "extraordinary" manner, such as with deadly force. Id. Therefore, in this case, if we find that the stop was supported by reasonable suspicion, it would be improper to invalidate the stop by saying that, when balanced with other factors, the stop somehow became unconstitutional.