OPINION
{¶ 1} Jerry Ellison Wilkins pled no contest to possession of crack cocaine after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The trial court found him guilty and sentenced him to community control.
 {¶ 2} The state's evidence at the suppression hearing established the following facts:
 {¶ 3} On May 5, 2003, Officer Paul Saunders of the Dayton Police Department was on routine patrol, driving in a marked cruiser. At approximately 1:45 a.m., Saunders observed a small, red Horizon turn onto Richmond Avenue without using its turn signal. Saunders was aware through communication with a fellow officer, Officer Orick, that the Horizon had previously been parked outside of a known drug house and that one of its occupants had been seen going inside the house and then returning to the vehicle. Saunders also knew that approximately fifteen to twenty drug arrests had been made in that particular area in the preceding two weeks. The officer activated his cruiser's overhead lights and initiated a traffic stop for the turn signal violation. The vehicle stopped in front of 100 Niagra Avenue.
 {¶ 4} Saunders communicated over the radio that he had made a traffic stop and began a check of the vehicle's license plates. The officer approached the vehicle along the driver's side and obtained the driver's out-of-state driver's license. Saunders noticed two passengers — a front-seat passenger who was not wearing a seat belt and a rear-seat passenger. Wilkins was the backseat passenger. Saunders returned to his vehicle and requested a K-9 unit. Officer William Geiger was within three or four blocks of the address and arrived with a canine within two or three minutes. After Geiger had arrived, the three occupants were asked to step out of the vehicle so that Turk, the canine, could conduct a sweep around the exterior of the vehicle. Because it was raining heavily, the individuals were invited to sit in the officers' cruisers while the drug-sniffing dog went around the Horizon. Wilkins was seated in Saunders' cruiser while the driver and front-seat passenger were placed in the other cruiser. The cruiser's door was closed, preventing Wilkins from exiting the cruiser without assistance from the officer.
 {¶ 5} Geiger walked his canine around the Horizon. The dog pawed at the passenger side of the vehicle. Geiger informed Saunders that the dog had hit on the vehicle for narcotics on the passenger side. Geiger immediately began a search of the Horizon. Saunders returned to his cruiser, opened the door, and said to Wilkins, "Hey, the dog hit on the car. Is there anything you want to tell me?" Wilkins responded, "I've got a little something something for personal use," and he took off his right shoe and handed Saunders a rock of crack cocaine. Geiger did not find narcotics in the vehicle. Saunders approached Geiger and called Officer Matthews to come to do a field test. The test indicated that the rock consisted of crack cocaine. Wilkins was placed under arrest and read his Miranda rights. While in route to the jail, Wilkins indicated that he had been a user for several years. The driver of the vehicle was given a traffic citation.
 {¶ 6} On May 13, 2003, Wilkins was indicted for possession of crack cocaine, in violation of R.C. 2925.11(A). He subsequently sought to suppress the narcotics and his statements to the police. In overruling the motion to suppress, the trial court determined that the officer had "objective and articulable facts that justif[ied] the brief continued detention of the Defendant beyond that of the initial traffic stop." Thus, it concluded that "the stop and detention of the Defendant were constitutional and the evidence obtained during the search of the vehicle will be admissible at trial." The court further determined that the statements made to Saunders were admissible. It reasoned that Wilkins "was not in custody when he told [O]fficer Saunders that he had a little something and then handed him the crack cocaine. At that time, the Defendant was not entitled to be read hisMiranda rights because he had not yet been arrested. * * * The statements that the Defendant made after he was arrested are also admissible because he was read his rights and indicated that he understood them and then waived his right to remain silent by making statements after his rights were read."
 {¶ 7} On appeal, Wilkins raises one assignment of error.
 {¶ 8} "The trial court erred in overruling Mr. Wilkins' motion to suppress evidence discovered due to his illegal detention and statements made in violation of his fifth amendment rights."
 {¶ 9} Although couched as one assignment of error, Wilkins raises two issues on appeal. First, he contends that "the police extended the stop of Mr. Wilkins, a passenger, beyond what was necessary to issue a citation to the driver for failing to use his turn signal." Second, he claims that he was "in custody, for `Miranda' purposes, when he was questioned by the police while locked in the back of the police cruiser." As discussed below, neither argument has merit.
 {¶ 10} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. Whren v.United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89. The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. State v. Chatton (1984), 11 Ohio St.3d 59,463 N.E.2d 1237; see State v. Kerns (Mar. 16, 2001), Montgomery App. No. 18439. "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. `In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" State v. Aguirre, Gallia App. 03CA5, 2003-Ohio-4909, quoting State v. Carlson (1995),102 Ohio App.3d 585, 598-59, 657 N.E.2d 591; State v. Ramos,155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523.
 {¶ 11} After the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention. The Supreme Court of Ohio has explained: "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." State v. Robinette (1997), 80 Ohio St.3d 234,685 N.E.2d 762 (paragraph one of the syllabus); see Ramos, supra.
 {¶ 12} It is well-established that a canine sniff does not constitute a search under the Fourth Amendment. United States v.Place (1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. Accordingly, a police officer need not have a reasonable suspicion that a vehicle contains contraband prior to summoning a canine drug unit. However, the police must have a reasonable suspicion that a vehicle contains drugs in order to detain a suspect beyond the time necessary to complete the traffic stop while a drug-trained canine is brought to the scene. State v.Heard, Montgomery App. No. 19323, 2003-Ohio-1047; see Kerns,
supra. "Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990), 70 Ohio App.3d 554, 556-557,591 N.E.2d 810, citing Terry, 392 U.S. at 27. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Heard, supra, quotingState v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271; Ramos, supra.
 {¶ 13} In the present case, Wilkins asserts that "[t]he calling for a k-9 unit, and the actions of the officers, indicate that the time it took to perform the dog search extended beyond what was necessary to issue the traffic citation." He argues that the officers took no steps to issue the citation for the turn signal violation until after the dog was called and the search completed. The state responds that the dog sweep occurred within eight minutes of the deputy stopping the car. It argues that, assuming that the deputy had already issued the traffic citation within that eight-minute time frame, Saunder's continued detention of Brown beyond the purpose of the traffic stop was reasonable, because he had a reasonable suspicion that the car contained drugs.
 {¶ 14} As an initial matter, Wilkins does not dispute that Saunders' initial stop of the Horizon was lawful due to the turn signal violation. See Whren, supra. With regard to his argument that Saunders unlawfully prolonged the stop to conduct a drug sniff, the state has conceded, for sake of argument, that the stop had been impermissibly prolonged. We agree with the state, however, that Saunders had a reasonable articulable suspicion that the vehicle contained narcotics, thus permitting the officer to detain Wilkins and the others beyond the time necessary to complete the citation resulting from the traffic stop. At the suppression hearing, Saunders testified that Officer Orick had reported that he had observed the Horizon pull up to a known drug house and that one of the occupants had gone into the drug house and come back out. Saunders further stated that the police had been "tipped off to a specific house that was selling drugs," and that approximately fifteen to twenty arrests had been made in the past two weeks. Saunders testified that this was the same house that "this defendant" was seen leaving at approximately 1:45 a.m. The car was stopped shortly after it had pulled away from the house. Considering the totality of the circumstances through the eyes of a reasonable and prudent police officer, we have no difficulty concluding that Saunders had a reasonable, articulable suspicion that the vehicle contained drugs. Accordingly, Saunders was justified in detaining the occupants until Geiger and Turk arrived at the scene to conduct the dog sniff.
 {¶ 15} Wilkins also claims that he was questioned by Saunders without being informed of his Miranda rights, in violation of the Fifth Amendment. In particular, Wilkins asserts that he was in custody when was locked in the back of the police cruiser, and that the police were required to provide Miranda warnings prior to questioning him. He therefore claims that the trial court should have suppressed the statements that he made, as well as the recovered cocaine as being a product of illegal police conduct. On appeal, Wilkins does not address the statements that he made to Saunders after his arrest.
 {¶ 16} Miranda warnings are required "when an individual is taken into custody or otherwise deprived of his freedom in any significant way and is subjected to questioning." Miranda v.Arizona (1966), 384 U.S. 436, 478, 86 S.Ct. 1602,16 L.Ed.2d 694. "Questioning alone does not trigger the requirement; the subject must also be in custody. * * * Only a custodial interrogation triggers the need for a Miranda rights warning."State v. Goodspeed, Montgomery App. No. 19979, 2004-Ohio-1819, citing State v. Biros, 78 Ohio St.3d 426, 1997-Ohio-204,678 N.E.2d 891, and Berkemer v. McCarty (1984), 468 U.S. 420,104 S.Ct. 3138, 82 L.Ed.2d 317. An individual is in custody when a reasonable person in the suspect's position would not have felt free to end the interrogation and to leave. United States v.Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.
 {¶ 17} Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444; Greenwood,
supra, at ¶ 22. "The determination whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.' `[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Biros,78 Ohio St.3d at 440 (citations omitted); State v. Reeves, Greene App. No. 2002-CA-9, 2002-Ohio-4810. "[P]ersons temporarily detained pursuant to Terry stops are not `in custody' for the purposes of Miranda." State v. Healy (Aug. 4, 2000), Montgomery App. No. 18232, quoting Berkemer, 468 U.S. at 440.
 {¶ 18} Wilkins argues that a reasonable person in his situation would have believed that he was in custody when he was placed in Saunders' cruiser. He states that he was removed from the Horizon and placed in the back of a police cruiser while the drug-sniffing canine was sweeping the vehicle. Wilkins emphasizes that he could not get out of the cruiser absent the officer opening the door from the outside. He further states that he was not free to leave the area. Wilkins indicates that the officer questioned him, without informing him of his Miranda rights, after the dog alerted on the vehicle and while he remained seated in the back of the cruiser.
 {¶ 19} In support of his argument that he was in police custody at the time he was seated in the cruiser, Wilkins relies upon State v. Salyer (Apr. 10, 1998), Miami App. No. 97-CA-39. In that case, Salyer's vehicle was stopped by police, who intended to arrest Salyer's passenger on an outstanding felony warrant. After backup arrived, Salyer was removed from his vehicle, patted-down for weapons, handcuffed, and placed in the rear of the officer's cruiser. He was told that he was not under arrest, but that he was being detained for his and the officers' safety while the arrest of the passenger occurred and "pending further investigation." Salyer was subsequently transferred to the rear of another officer's cruiser where he was questioned about the presence of drugs in the vehicle. Salyer ultimately stated, in essence, that drugs were in the car and that they belonged to him. After the car was impounded and swept by a drug detection dog, two pounds of marijuana were found in the vehicle. Salyer was charged with drug abuse.
 {¶ 20} Upon reversing the trial court's refusal to suppress the statements made in the cruiser, we concluded that "Salyer's freedom of action was restrained to a degree associated with a formal arrest such that a reasonable person in the same situation would have considered himself to be in police custody." Distinguishing State v. Schultz (1985), 23 Ohio App.3d 130,491 N.E.2d 735, in which a visitor in a home was not in custody when he was handcuffed while the home was searched, we noted that Salyer had been handcuffed and that "the ultimate resolution was unforeseeable to him." Because Salyer had been told that he was being held "pending further investigation," he could not reasonably foresee when he would be released. Under those circumstances, we held that Salyer was "in custody" for purposes of Miranda.
 {¶ 21} As argued by the state, Salyer is readily distinguishable. According to Saunders, Wilkins and the other occupants of the Horizon were asked to exit the vehicle prior to the canine drug sniff. Saunders testified that it was raining heavily at that time, and that the occupants were invited to sit inside the cruisers. He indicated that he would normally ask the occupants of the vehicle to stand on the sidewalk while a canine sweep occurred. Wilkins was not handcuffed and, although he had to receive the assistance of the officer to exit the cruiser once inside, there is no suggestion in the record that Wilkins was required to sit in the cruiser or to remain therein if he wished to stand in the rain. In addition, the police took no actions that would cause Wilkins to believe that his detention was indefinite. To the contrary, a reasonable person would have assumed that he was sitting in the cruiser for the purpose of keeping himself dry during the short duration of the canine drug sniff. Such circumstances do not rise to level of custody. Stated simply, nothing about these circumstances would have led a reasonable person to believe that he was under arrest or that his movements were restrained to a degree associated with an arrest. Because Wilkins was not in custody while he was seated in Saunders' cruiser, the officer was not required to provideMiranda warnings prior to informing him of the dog's alert and asking him "Is there anything you want to tell me?"
 {¶ 22} Wilkins' assignment of error is overruled in its entirety.
 {¶ 23} The judgment of the trial court will be affirmed.
Brogan, J. and Young, J., concur.