The STATE of Ohio, Appellee,

v.

JONES, Appellant.

[Cite as *State v. Jones*, 187 Ohio App.3d 478, 2010-Ohio-1600.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–09–011.

Decided April 9, 2010.

Raymond Fischer, Wood County Prosecuting Attorney, and Gwen Howe–Gebers and Jacqueline M. Kirian, Assistant Prosecuting Attorneys, for appellee.

Lawrence A. Gold, for appellant.

---

Cosme, Judge.

{¶ 1} Appellant, Pamela L. Jones, entered a plea of no contest to trafficking in marijuana after 155 pounds of marijuana was found in her car following a traffic stop. The trial court sentenced appellant to eight years' incarceration, and she appeals. In her assignment of error, appellant complains that the trial court erred in denying her motion to suppress the evidence obtained during the unlawful stop, since the police officer was outside of his territorial jurisdictional limit when he observed the violations and when he stopped her.

{¶ 2} Though we agree that the suppression of ill-gotten evidence vindicates a deprivation of a constitutional right, specifically appellant's right to be free from unlawful searches and seizures under the Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, we disagree with appellant that a violation of R.C. 4513.39 rises to the level of a constitutional deprivation. Therefore, we find appellant's assignment of error without merit and affirm her conviction and sentence.

## I.  BACKGROUND

{¶ 3} On September 20, 2007, appellant was driving north on I–75. Sergeant Gazarek of the Perrysburg Township Police Department observed appellant's car near the 189-mile marker following a semi-truck too closely, and after passing the semi-truck, following a minivan too closely. Sergeant Gazarek also observed appellant drift over the fog line twice. He then initiated a traffic stop. Sergeant Gazarek advised appellant, who had gotten out of her car, that she would receive only a warning—as long as everything checked out with her license. However, upon returning to appellant's car, he detected the odor of raw marijuana. Based on his observations of appellant, certain items in the car, and the fact that the rental agreement for the car had expired, he asked for and received consent to search the car. In the trunk, hidden under a blanket, was 155 pounds of marijuana wrapped in cellophane. Cash in the amount of $790 was also recovered from the car.

{¶ 4} Appellant was charged with misdemeanor traffic violations for following too closely and crossing marked lanes. She was also charged with felony trafficking in drugs and drug abuse.

{¶ 5} Following the indictment, discovery, and request for a bill of particulars, appellant filed a motion to suppress. A hearing was conducted, and the trial court later filed a judgment entry denying the motion. The trial court acknowledged that there "may be some debate over a township police officer's authority to issue certain traffic violations or to effectuate an arrest for certain code infractions on an interstate highway, * * * no traffic citation was issued in the instant case and that the Defendant's arrest was the result of the discovery of contraband in her vehicle and was not the result of a traffic violation." The traffic citation attached to appellant's brief, however, belies the trial court's finding that there was no traffic citation. The traffic ticket sets forth two traffic violations, as well as two felony charges. The trial court denied appellant's motion for reconsideration.

{¶ 6} On November 26, 2008, appellant entered a plea of no contest to the charge of trafficking in marijuana with a specification in exchange for the dismissal of the drug-abuse charge. The trial court issued its judgment the same day, accepting appellant's plea of no contest to a violation of R.C. 2925.03, trafficking in drugs. The charge of drug abuse in violation of R.C. 2925.11 was dismissed. Appellant was sentenced to eight years in prison.

## II. ANALYSIS

{¶ 7} In her only assignment of error, appellant asserts: "The trial court erred in denying Appellant's motion to suppress in violation of Appellant's right to be free from unlawful search and seizures under the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution." In essence, appellant argues that the evidence of the felony should have been suppressed because the officer did not have probable cause to initiate a traffic stop. Asserting that there was no probable cause, appellant argues that the subsequent search and seizure were unlawful. Finally, appellant argues that the consent to search was not freely given.

A. Sergeant Gazarek had probable cause to stop appellant.

{¶ 8} Appellant asserts that under R.C. 4513.39, Sergeant Gazarek did not have the authority to stop her for traffic offenses that he observed to have been committed outside of Perrysburg Township. The state concedes that Sergeant Gazarek may have been without authority to stop appellant for the traffic violations she was charged with, because he may not have been in the township at the time he observed the violations or at the time he stopped appellant. While we agree that Sergeant Gazarek was outside his jurisdiction, we find that he nevertheless had probable cause to make the stop.

{¶ 9} The Supreme Court of Ohio has construed R.C. 4513.39 to mean that "a township police officer has no authority to stop motorists for any of the offenses, enumerated in that statute, which have been committed on a state highway outside municipal corporations." *State v. Holbert* (1974), 38 Ohio St.2d 113, 67 O.O.2d 111, 311 N.E.2d 22, paragraph two of the syllabus. The traffic offenses that appellant has been charged with are enumerated in that statute.

{¶ 10} Under R.C. 4513.39, Sergeant Gazarek did not have the authority to stop appellant for misdemeanor violations of R.C. 4511.34 and 4511.33.

{¶ 11} Appellant suggests that because Sergeant Gazarek did not have the authority to make the traffic stop, it was unreasonable under the Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution. Appellant further relies upon R.C. 2935.03(A)(1), which governs a police officer's jurisdiction to arrest: "A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, police officer of a township or joint township police district * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township."

{¶ 12} Although appellant is correct that the stop is invalid because it occurred outside of Sergeant Gazarek's jurisdiction as defined under R.C. 2935.03(A)(1), she is not correct in her assertion that the exclusionary rule is similarly invoked.

{¶ 13} In *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598, the Supreme Court of Ohio held that a violation of R.C. 2935.03(D) was not constitutional in nature and therefore did not justify a suppression of evidence. As long as the stop, detention, and/or arrest is valid within constitutional parameters, its extraterritoriality cannot independently be a basis for suppression of evidence or dismissal of charges.

{¶ 14} Appellant's suggestion that the stop was illegal and should invoke the exclusionary rule was specifically addressed by the Ohio Supreme Court in *State v. Weideman* (2002), 94 Ohio St.3d 501, 764 N.E.2d 997, syllabus: "[W]here a law enforcement officer, acting *outside* the officer's statutory territorial jurisdiction, stops and detains a motorist for an offense committed and observed *outside* the officer's jurisdiction, the seizure of the motorist by the officer is not unreasonable *per se* under the Fourth Amendment." (Emphasis added.) Although a stop is not per se unreasonable, a court could find that an extraterritorial stop is unreasonable based on the unique facts and circumstances of a particular case. However, in *Weideman,* the court held, "The state's interest in protecting the public from a person who drives an automobile in a manner that endangers other drivers outweighs [the defendant's] right to drive unhindered." Id. at 506, 764 N.E.2d 997.

{¶ 15} In *Virginia v. Moore* (2008), 553 U.S. 164, 171, 128 S.Ct. 1598, 170 L.Ed.2d 559, the United States Supreme Court explained that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." The court in Moore further acknowledged that although states could legislate a higher standard on searches and seizures, those laws do not alter the requirements of the Fourth Amendment.

{¶ 16} Although the Virginia statute did not provide a remedy of suppression for a violation, the United States Supreme Court concluded that "it is not the province of the Fourth Amendment to enforce state law." Id. at 178, 128 S.Ct. 1598, 170 L.Ed.2d 559. Similarly, in *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, ¶ 21, citing *Virginia v. Moore* at 178, 128 S.Ct. 1598, 170 L.Ed.2d 559, the Ohio Supreme Court observed, "Although it could have done so, the General Assembly chose not to provide any remedy for a violation of R.C. 2935.03(A)(1). Thus, pursuant to Moore, we are not in the position to rectify this possible legislative oversight by elevating a violation of R.C. 2935.03 to a Fourth Amendment violation and imposing the exclusionary rule, because the stop in this case was constitutionally sound." (Footnote omitted.)

{¶ 17} We conclude that Sergeant Gazarek had probable cause to stop appellant. The manner in which appellant was operating her vehicle gave Sergeant Gazarek sufficient probable cause to make the stop. Although Sergeant Gazarek's detention of appellant for the traffic violations was without authority, Ohio courts have held that a police officer who personally observes a traffic violation while outside of his statutorily defined jurisdiction has probable cause to make a traffic stop. See *State v. Holbert*, 38 Ohio St.2d 113, 67 O.O.2d 111, 311 N.E.2d 22; *State v. Rusnak* (1997), 120 Ohio App.3d 24, 696 N.E.2d 633; see also *State v. Clark*, 6th Dist. No. S–03–039, 2004-Ohio-2774, 2004 WL 1190010; *State v. Farber* (Feb. 28, 1980), 10th Dist. No. 79AP–673, 1980 WL 353303. Thus, the stop of appellant was not unreasonable per se under the Fourth Amendment.

{¶ 18} Because Sergeant Gazarek's detention of appellant under the circumstances presented here did not violate the Fourth Amendment, the trial court was not required to suppress evidence obtained as a result of the stop and detention.

B. The search and seizure were not unlawful.

{¶ 19} Appellant further asserts that because the traffic stop was unreasonable under the Fourth Amendment, the subsequent search and seizure were unlawful. Specifically, she asserts that (1) there existed no reasonable and articulable suspicion for the stop, (2) the initial detention took longer than it should have, and (3) the detention subsequent to the initial stop was not proper. We disagree.

{¶ 20} In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8, the Supreme Court of Ohio stated that "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid."

{¶ 21} To meet the reasonable-suspicion standard, an officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. "The 'reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 19. Thus, "a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion." *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 13, citing *Berkemer v. McCarty* (1984), 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317.

{¶ 22} Although the court in *Mays* stated that "[p]robable cause is certainly a complete justification for a traffic stop," the court has "not held that probable cause is required." *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. Instead, the court observed that "[p]robable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop." *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23.

{¶ 23} Thus, our analysis begins with the question whether there existed a reasonable and articulable suspicion to justify the stop at issue here.

1. There existed a reasonable and articulable suspicion to justify the stop.

{¶ 24} When presented with a motion to suppress, the trial court assumes the role of trier of fact. See *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. As such, the trial court is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41; see also *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. On review, we must accept the trial court's factual findings if they are supported by competent, credible evidence. Accepting those facts as true, we must then independently determine whether, as a matter of law and without deference to the trial court's conclusion, those facts

meet the applicable legal standard. *Mayl* at ¶ 41; *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.

■ {¶ 25} Sergeant Gazarek stopped appellant for two traffic violations. Sergeant Gazarek stopped appellant for violating R.C. 4511.34, which prohibits a driver from following another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicle * * * and the traffic * * * and the condition of the highway."

{¶ 26} Sergeant Gazarek also stopped appellant for violating R.C. 4511.33, which states: "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply: (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

{¶ 27} With respect to following too closely, Sergeant Gazarek testified that the distance between appellant and the semi-truck in front of her was "one car length." He described the speed of appellant's car as approximately "55 to 60 miles an hour." Sergeant Gazarek testified that "generally a car should be traveling one car length for each ten miles [per hour it is traveling]," based on National Highway Traffic Safety Administration standards. Sergeant Gazarek also observed appellant pull in too closely behind a minivan after passing the semi-truck.

{¶ 28} Sergeant Gazarek then testified that while he was behind appellant's car, he "viewed the vehicle then travel onto the right fog lines twice." At that time, Sergeant Gazarek initiated the traffic stop.

{¶ 29} Appellant asserts that Sergeant Gazarek's stop was a merely a pretext for further investigation for drugs based on her Texas license plates. She also argues that Sergeant Gazarek "did not observe a traffic violation." Explaining the one car length between her and the semi-truck, appellant insists that the "Sergeant is simply describing how one must close distance between vehicles if one is to pass the other." However, one need not come within one car length in order to pass.

■■ {¶ 30} Next, appellant asserts that her other violations—twice driving across the white edge line—are not enough to constitute a violation of R.C. 4511.33. Appellant's argument is not persuasive. R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic. When an officer observes a vehicle drifting across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33. See *State v.*

*Stokes*, 10th Dist. No. 07AP–960, 2008-Ohio-5222, 2008 WL 4482800. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 17.

{¶ 31} In this case, the trial court concluded that Sergeant Gazarek did observe appellant following too closely to the semi-truck and minivan, as well as drifting across the white fog line twice. Thus, Sergeant Gazarek had a reasonable and articulable suspicion that appellant had violated both R.C. 4511.34 and 4511.33. Sergeant Gazarek not only had a reasonable and articulable suspicion upon which to stop appellant, he also had probable cause.

2. Appellant was not wrongfully detained.

{¶ 32} When a defendant is detained prior to giving consent to search his automobile, the legality of the detention is a " 'predicate to an intelligent resolution' " of whether the consent was voluntarily given. *State v. Robinette* (1997), 80 Ohio St.3d 234, 236, 685 N.E.2d 762, quoting *Ohio v. Robinette* (1996), 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347. "If appellee consented to the search during an illegal detention, the state bears the burden of proving that under the totality of the circumstances, appellee's consent was 'an independent act of free will,' and not a result of the illegal detention." *State v. Bennett* (June 21, 2000), 4th Dist. No. 99 CA 2509, 2000 WL 821616, *4, citing *Florida v. Royer* (1983), 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229; see also *State v. Robinette* at 243, 685 N.E.2d 762. "If, however, no illegal detention occurred, the state need not demonstrate that appellee's consent was an independent act of free will. Rather, the state must illustrate that the totality of the circumstances establish that appellee voluntarily consented to the search." *State v. Bennett* at *4, citing *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854; 3 LaFave, Search and Seizure (3d Ed.1996) Section 8.2(d).

{¶ 33} Appellant claims that her initial detention was illegal because Sergeant Gazarek did not have the authority to detain her. We have addressed this claim, holding that while Sergeant Gazarek did not have the authority to detain or arrest her, he did have probable cause to conduct a traffic stop and temporarily detain appellant based on his observations of the traffic violations.

3. The initial detention did not take longer than it should have.

{¶ 34} Appellant argues next that Sergeant Gazarek's investigation took longer than was reasonably necessary. We disagree.

{¶ 35} The temporary detention of a person during a traffic stop is a seizure. *State v. Kazazi*, 6th Dist. No. WD–03–035, 2004-Ohio-4147, 2004 WL

1765404, ¶ 9, citing *State v. Vass*, 7th Dist. No. 01CA4, 2002-Ohio-6887, 2002 WL 31812708, ¶ 12. A traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237; *State v. Wilkins*, 2d Dist. No. 20152, 2004-Ohio-3917, 2004 WL 1662101, ¶ 10. "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates." *State v. Aguirre*, 4th Dist. No. 03CA5, 2003-Ohio-4909, 2003 WL 22136234, ¶ 36, citing *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599, 657 N.E.2d 591. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Carlson*, 102 Ohio App.3d at 598–599, 657 N.E.2d 591. See *State v. Aguirre*, 4th Dist. No. 03CA5, 2003-Ohio-4909, 2003 WL 22136234, ¶ 36, citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522, 605 N.E.2d 70. See also *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523.

{¶ 36} In *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph one of the syllabus, the Supreme Court of Ohio explained: "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." See *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 13–14; *State v. Wilkins*, 2d Dist. No. 20152, 2004-Ohio-3917, 2004 WL 1662101, ¶ 11.

{¶ 37} Appellant asserts that after Sergeant Gazarek asked her whether she had any knives, bombs, hand grenades, large sums of money, or marijuana, her detention was no longer reasonable or justified. In *State v. Brown*, 183 Ohio App.3d 337, 2009-Ohio-3804, 916 N.E.2d 1138, this court found that the same officer—Sergeant Gazarek—during a traffic stop approximately four months before appellant was stopped, had "asked questions irrelevant to the original purpose of the stop," and in doing so, he " 'expand[ed] the investigative scope of the detention.' " Id. at ¶ 20. During that stop, Sergeant Gazarek engaged in a line of questioning including asking whether there were "any weapons, narcotics, or large sums of money in the vehicle." Id. at ¶ 14. Holding that "the tactics used * * * impermissibly expanded the length and the scope of the investigative stop and violated the Fourth Amendment to the Constitution of the United States

and Section 14, Article I of the Ohio Constitution," this court held that the evidence that was the result of the subsequent search should be suppressed. Id. at ¶ 24.

{¶ 38} However, unlike in *Brown,* there is no evidence that Sergeant Gazarek's questioning in this case "expand[ed] the investigative scope of the detention." Id. at ¶ 20. The questions were asked while appellant was pulling out her license and rental-car paperwork. He immediately processed the license and within ten minutes was returning to appellant's vehicle to give her back her paperwork. This is well within the time suggested in *Brown*—"A review of this court's prior cases indicates that an officer should, on average, have completed the necessary checks and be ready to issue a traffic citation in approximately 15 minutes." Id. at ¶ 23. See *State v. Johnson,* 6th Dist. No. L–06–1035, 2007-Ohio-3961, 2007 WL 2216951, ¶ 10; see also *State v. Meza,* 6th Dist. No. L–03–1223, 2005-Ohio-1221, ¶ 9. In *Brown,* the court was "convinced that by impermissibly questioning both the driver and appellant, the length of the stop was prolonged." *Brown* at ¶ 23. But here, there is no evidence that the length of the stop was prolonged in any significant manner.

### 4. The detention subsequent to the initial stop was proper.

{¶ 39} Next, appellant argues that the stop was unreasonably prolonged following Sergeant Gazarek's statement to her that he would "issue a warning." Because Sergeant Gazarek had detected the odor of raw marijuana, he permissibly extended the length of the duration to ask whether he could search the car. Appellant fails to realize that the odor of marijuana gave rise to an independent reasonable, articulable suspicion that criminal activity was afoot.

{¶ 40} The facts demonstrate that the detention based on the traffic stop lasted for only as long as it took Sergeant Gazarek to walk to appellant's car, obtain appellant's driver's license, discuss the rental form for the car, and express his intent to issue only a warning. It was only when Sergeant Gazarek returned to the vehicle to give appellant her license back that he detected the odor of raw marijuana. Recognizing the odor, Sergeant Gazarek immediately asked for and received consent to search the car.

{¶ 41} Although Sergeant Gazarek had probable cause to stop appellant's car, to further detain appellant, and to conduct a search, he also needed probable cause to conduct a search. Probable cause is a term that has been defined as " 'a reasonable ground for belief of guilt.' " *Carroll v. United States* (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543, quoting *McCarthy v. Dearmit* (1881), 99 Pa. 63, 69. See *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. Probable cause must be based upon objective facts that would justify the issuance of a warrant by a magistrate. *State v. Welch*

(1985), 18 Ohio St.3d 88, 92, 18 OBR 124, 480 N.E.2d 384. The United States Supreme Court has long acknowledged that odors may be persuasive evidence to justify the issuance of a search warrant. *Johnson v. United States* (1948), 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (odor of burning opium from a hotel room gave officers probable cause to obtain a search warrant); *Taylor v. United States* (1932), 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (distinctive odor of alcohol is an objective fact indicative of a possible crime). So long as the person is qualified to know and identify the odor and it is a distinctive odor that undoubtedly identifies a forbidden substance, this constitutes a sufficient basis to justify the issuance of a search warrant. *Johnson* at 13, 68 S.Ct. 367, 92 L.Ed. 436.

{¶ 42} In *State v. Moore* (2000), 90 Ohio St.3d 47, 734 N.E.2d 804, the Ohio Supreme Court held that the detection of the odor of marijuana, alone, by an experienced law-enforcement officer, is sufficient to establish probable cause to conduct a reasonable search. See, e.g., *People v. Kazmierczak* (2000), 461 Mich. 411, 413, 605 N.W.2d 667 ("the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle"). Likewise, federal courts share this view. See *United States v. Garza* (C.A.6, 1993), 10 F.3d 1241.

{¶ 43} Here, Sergeant Gazarek testified regarding his extensive training and experience in identifying and detecting the smell of raw marijuana. He testified that he did not detect the odor until appellant opened her car door. Sergeant Gazarek also testified that raw marijuana has a distinctive smell. Based on the odor, he believed there was raw marijuana in appellant's car.

{¶ 44} The odor of raw marijuana was a reasonable ground for Sergeant Gazarek to believe that appellant was guilty of a drug-related criminal offense. Therefore, we conclude that Sergeant Gazarek had sufficient probable cause to conduct a search based exclusively upon the odor of raw marijuana coming from appellant's car.

C. Consent to search

{¶ 45} Appellant contends that she did not voluntarily give consent to search her car. We find that the totality of the circumstances supports the conclusion that the consent was voluntary and the odor of raw marijuana, alone, was sufficient to establish probable cause for a warrantless search. Therefore, we disagree.

{¶ 46} The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I, Ohio Constitution, protect individuals from unreasonable searches and seizures on the part of the government. *State v. Orr* (2001), 91 Ohio St.3d 389, 390, 745 N.E.2d 1036; *State v. Martinez,*

3d Dist. No. 9–02–57, 2003-Ohio-1821, 2003 WL 1836672, ¶ 9. It is well settled that a search conducted without a warrant issued upon probable cause is *"per se* unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Consent is recognized as one of these well-established exceptions. *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton* (2002), 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640. Consent to a search is "a decision by a citizen not to assert Fourth Amendment rights." Katz, Ohio Arrest, Search and Seizure (2004) 341, Section 17:1.

{¶ 47} Appellant asserts that her consent was not voluntary in light of the totality of the circumstances. However, appellant's Fourth Amendment rights were not impinged upon because Sergeant Gazarek had probable cause to detain her and continue the detention based on the odor of raw marijuana. The questioning occurred during the initial stop, and none of the factors set forth in *Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041, 36 L.Ed.2d 854, appear. Thus, this court finds that the totality of the circumstances demonstrates that appellant's consent to the search of the car was voluntary.

{¶ 48} An individual's voluntary consent, determined under the totality of the circumstances, may validate an illegal detention and subsequent search if the consent is an "independent act of free will." *Florida v. Royer* (1983), 460 U.S. 491, 501–502, 103 S.Ct. 1319, 75 L.Ed.2d 229. For an unlawfully detained individual's consent to be considered an independent act of free will, "the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave." *State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph three of the syllabus. This is an objective test, and the proper inquiry "is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick* (1991), 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389.

{¶ 49} The state has the burden of proving, by "clear and positive" evidence, not only that the necessary consent was obtained, but also that it was freely and voluntarily given. *Florida v. Royer* at 497, 103 S.Ct. 1319, 75 L.Ed.2d 229; *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797; *State v. Posey* (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61.

{¶ 50} "Clear and positive evidence" is the equivalent of clear and convincing evidence. *State v. Danby* (1983), 11 Ohio App.3d 38, 41, 11 OBR 71, 463 N.E.2d 47. Whether an individual voluntarily consented to a search is a question of fact, not a question of law. See *Ohio v. Robinette*, 519 U.S. at 40, 117 S.Ct. 417, 136 L.Ed.2d 347; *Schneckloth v. Bustamonte,* 412 U.S. at 227, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Robinette,* 80 Ohio St.3d at 248–249, 685 N.E.2d 762; see also *State v. Southern* (Dec. 28, 2000), 4th Dist. No. 00CA2541, 2000 WL 33226310.

{¶ 51} Because reviewing courts should defer to the trial court when it acts as a trier of fact, we must give proper deference to the court's finding regarding whether appellant voluntarily consented to a search.

{¶ 52} Thus, we review the trial court's finding that appellant voluntarily consented to the search under the weight-of-the-evidence standard set forth in *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Even though the state's burden of proof is "clear and convincing," this standard of review is highly deferential, and the presence of only "some competent, credible evidence" to support the trial court's finding requires us to affirm it. Id. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. This principle applies to suppression hearings as well as to trials. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

{¶ 53} In *State v. Moore,* 90 Ohio St.3d 47, 734 N.E.2d 804, the Supreme Court of Ohio held that even under a totality-of-the-circumstances analysis, the smell of marijuana alone, as detected by a person who is qualified to recognize the odor, is sufficient to establish probable cause. See *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 720 N.E.2d 507. There need be no additional factors to corroborate the suspicion of the presence of marijuana. Appellant's sole assignment of error is not well taken. The judgment of the trial court is affirmed.

## III. CONCLUSION

{¶ 54} Although Sergeant Gazarek did not have the authority to arrest or detain appellant for the misdemeanor traffic violations, or to issue the traffic citations, he did have probable cause to make the stop because he had witnessed appellant following too closely and failing to stay within her lane. While Sergeant Gazarek's questioning about bombs and hand grenades was clearly unrelated to the original stop, it did not impermissibly extend the stop. The odor of raw marijuana itself provided Sergeant Gazarek with sufficient probable cause

to extend the detention and to conduct a warrantless search of the car. Nevertheless, he did ask for and receive consent to search.

{¶ 55} Therefore, based upon the foregoing, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

HANDWORK and SINGER, JJ., concur.