[Cite as *State v. Grubbs*, 2017-Ohio-41.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-16-023

    Appellant                             Trial Court No. 15 CR 199

v.

Ronald E. Grubbs                            **DECISION AND JUDGMENT**

    Appellee                               Decided:  January 6, 2017

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Thomas A.
Matuszak and Aram M. Ohanian, Assistant Prosecuting Attorneys,
for appellant.

William V. Stephenson, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, the state of Ohio, appeals the April 28, 2016 judgment of the

Wood County Court of Common Pleas granting the motion to suppress of appellee,

Ronald Grubbs.  For the reasons that follow, we affirm.

**{¶ 2}** Appellant sets forth one assignment of error:

The trial court committed reversible error when it granted Appellee's motion to suppress.

## I. Factual Background

**{¶ 3}** On May 16, 2015, while patrolling southbound on interstate 75 in Wood County, Ohio, Bowling Green Police Officer Mike Clingenpeel conducted a license plate check on a pick-up truck. The officer learned the truck's owner, James Baldwin, had a suspended license. Since the driver of the truck matched the description of the owner of the truck, the officer initiated a traffic stop. Appellee was a passenger in the truck.

**{¶ 4}** Officer Clingenpeel approached the pick-up and confirmed Baldwin was driving and had a suspended driver's license. Appellee informed the officer he was legally blind and produced an Ohio identification card. The officer called for back-up and Officer Ryan Rosacrans arrived at the scene. The patrol car Officer Clingenpeel was driving was equipped with video and audio equipment which recorded the following events.

**{¶ 5}** Officer Clingenpeel had appellee step out of the truck. Appellee walked to the rear of the passenger side of the truck then turned and took a few steps behind the truck, toward the roadway. Officer Rosacrans guided appellee by the arm to the rear passenger corner of the truck where appellee, who was on his cellphone, stood and waited.

2.

{¶ 6} Officer Clingenpeel told Baldwin to step out of the truck and Baldwin complied. The officer asked if he could search Baldwin and Baldwin consented. The officer patted down Baldwin and found a straw with white powder. Baldwin was placed in handcuffs and put in the rear seat of the patrol car.

{¶ 7} Officer Clingenpeel walked up to Officer Rosacrans and said Baldwin had a straw with white residue and pills in his pocket and appellee had pills in his pocket. Officer Clingenpeel then inspected the area by the passenger side of the truck, returned to Officer Rosacrans, and showed him what looked to Officer Clingenpeel to be a pill. Officer Clingenpeel said to Officer Rosacrans that appellee had a lot of money with him and Officer Rosacrans said he could see it sticking out of appellee's pocket. Officer Clingenpeel told appellee he would have to get off of his cell phone soon; appellee obeyed. Meanwhile, Officer Clingenpeel searched the truck.

{¶ 8} Officer Clingenpeel then approached appellee and asked if appellee had anything on him that he was not supposed to have. Appellee asked why he was being searched, he did not do anything wrong, and the officer responded because appellee had flakes of marijuana on his shirt. Appellee said he did not. The officer again asked appellee, "[D]o you have anything on you before I search you here?" Appellee replied, "Just arrest me, man. Take my shit, put me in cuffs." Appellee was handcuffed and searched. In appellee's pockets, the officer found pill bottles. Appellee made certain admissions.

3.

**{¶ 9}** On June 3, 2015, appellee was indicted on one count of aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the fifth degree. Appellee pled not guilty.

**{¶ 10}** On October 27, 2015, appellee filed a motion to suppress the evidence seized in the warrantless search. The state filed a memorandum in opposition arguing the Oxycodone found on appellee should not be suppressed because once Officer Clingenpeel "received probable cause that a crime was being committed (possession of marijuana)" the officer was justified in searching appellee.

**{¶ 11}** On March 14, 2016, a suppression hearing was held at which Officer Clingenpeel and appellee testified. In addition to the foregoing recorded events, the officer testified when he was on the passenger side of the truck, within one foot of appellee, he smelled marijuana. He also observed a one-hit pipe by Baldwin's right leg, marijuana residue on appellee's shirt and bulges in appellee's pockets which the officer could see were pill bottles. The officer asked appellee about the contents of his pockets and appellee "just said he had all kinds of shit in there." After appellee got out of the truck, he was going to walk toward the highway but Officer Rosacrans stopped him.

**{¶ 12}** Officer Clingenpeel testified about his drug interdiction training where he was "shown what different types of drugs are, especially the marijuana, the odor of marijuana, which in this case I smelled emitting from the vehicle, and, you know, just some of the indicators and signs that somebody might be under the influence of drugs

4.

and/or they might be transporting drugs." He also testified about his experience with marijuana in his 13 and one-half years as an officer.

{¶ 13} Officer Clingenpeel testified he determined the truck had to be towed since there was no licensed driver to drive the truck and the truck could not remain parked on the side of the highway, which was under construction. The officer called for backup and before backup arrived, he allowed appellee to use appellee's cell phone to get a ride, but appellee was unable to do so. The officer offered to give Baldwin and appellee a ride to Bowling Green since it is illegal to walk on the interstate and "they said that'd be fine."

{¶ 14} Officer Clingenpeel testified, following the consent search and arrest of Baldwin, he searched the truck and found two marijuana roaches in the ashtray.

{¶ 15} Officer Clingenpeel testified he placed appellee in handcuffs as he believed he had probable cause to search appellee because of the marijuana residue on his shirt. The officer was not arresting appellee; he handcuffed appellee to safely conduct the search. The officer had no cause to believe appellee was armed or dangerous.

{¶ 16} Appellee testified at the hearing that before he got out of the truck, the officer asked what was in appellee's pockets because the officer saw bulges in appellee's pockets. When appellee got out of the truck, one officer told the other officer that appellee had pills in his pocket and to watch appellee, he was going to throw them.

{¶ 17} Appellee testified while he was on the phone, he was trying to arrange for a ride and had obtained a ride when the officer asked him to get off of the phone. Appellee did not have a chance to tell the officer that he had a ride.

5.

{¶ 18} Appellee testified although he was legally blind, he could see objects, but he could not drive a vehicle. Appellee saw the cars on the interstate and he was not going to wander out into the highway.

{¶ 19} Appellee testified he asked the officer why he was being taken out of the car and searched as he had not done anything wrong and the officer said because there was marijuana residue on his shirt. Appellee was then handcuffed and searched.

{¶ 20} The trial court granted the motion to suppress, finding Officer Clingenpeel did not have probable cause to arrest or search appellee because the officer did not have grounds to reasonably believe appellee possessed more than a minor misdemeanor amount of marijuana. The court further found appellee's statements to the officer prior to the search did not constitute consent to search appellee's person. The court concluded since the officer did not have a search warrant and none of the warrant exceptions applied, the search violated appellee's Fourth Amendments rights. The state appealed.

## II. State Appeal

{¶ 21} When the state appeals an order suppressing evidence, the prosecutor shall certify "the appeal is not taken for the purpose of delay" and "the ruling on the motion * * * has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." Crim.R. 12(K).

{¶ 22} Here, it is undisputed that the state's notice of appeal was accompanied by the certification required by Crim.R. 12(K).

6.

### III. Arguments

{¶ 23} The state argues the only issue is whether Officer Clingenpeel lawfully conducted a warrantless search of appellee's pants pockets. The state contends the officer had probable cause to believe that evidence of a crime was located in appellee's pockets, and as a result, exigent circumstances existed to conduct a search. In addition, the state argues appellee freely and voluntarily consented to the search.

{¶ 24} The state further claims the trial court used the wrong legal standard by focusing on the marijuana and finding there was nothing the officer observed which could lead him to reasonably believe appellee possessed more than 100 grams of marijuana. The state asserts the trial court rejected the totality of the circumstances test, as based on the totality of the events, the officer had probable cause to search appellee.

{¶ 25} Appellee counters the evidence was insufficient to establish probable cause for a lawful search. Appellee argues the officer relied on the bulge in appellee's pocket to support the claim of probable cause but the observation of a bulge, standing alone, does not amount to probable cause. Appellee contends all that Officer Clingenpeel could have concluded was that appellee possessed a minor misdemeanor amount of marijuana, an offense for which he could not be searched or arrested. Appellee asserts he did not freely and voluntarily consent to be searched by the officer.

7.

## IV. Law and Analysis

## Motion to Suppress Standard

{¶ 26} "Appellate review of a motion to suppress presents mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. The appellate court must accept the trial court's findings of fact, as long as the facts are supported by competent, credible evidence. *Id.* The appellate court applies a de novo standard of review to decide whether the facts satisfy the applicable legal standard. *Id. See also State v. Bragg*, 6th Dist. Lucas No. L-07-1162, 2007-Ohio-5993, ¶ 4.

## Fourth Amendment/Warrant Exceptions

{¶ 27} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. While the Fourth Amendment requires a search warrant based upon probable cause, there are specifically established exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

## Investigative Stop/Frisk

{¶ 28} One exception to the warrant requirement is the investigative stop, which allows a police officer to stop a person if the officer has an objectively reasonable suspicion that criminal behavior has occurred or is imminent. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer may then frisk the person for

8.

weapons if the officer has a reasonable suspicion that the person may be armed and dangerous. *Id.* "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigations without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph two of the syllabus.

{¶ 29} An officer may initiate a traffic stop when "there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered." *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Mitchell*, 6th Dist. Lucas No. L-10-1047, 2010-Ohio-4708, ¶ 15-17. During the stop, an officer may order all of the occupants to step out of the vehicle pending completion of the traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997). When a passenger is cooperative and gives no indication that he is armed or dangerous, an officer may not perform a protective frisk. *State v. Caldwell*, 6th Dist. Huron No. H-00-013, 2000 Ohio App. LEXIS 4442, *8 (Sept. 29, 2000).

{¶ 30} Here, the record shows Officer Clingenpeel had the right to stop Baldwin's truck based on a reasonable suspicion that Baldwin had a suspended driver's license. Following the traffic stop, the officer had the authority to, and did, order appellee out of

9.

the truck. Appellee was cooperative and complied with all of the officer's commands. There is no evidence that appellee had a weapon or was dangerous, nor is there evidence that Officer Clingenpeel had any basis to believe appellee was armed or dangerous. When Officer Clingenpeel inquired if appellee had anything on him that he was not supposed to have, appellee asked why he was being searched, and the officer stated because of marijuana flakes on appellee's shirt. Appellee was then handcuffed and searched. Based on the totality of the circumstances, Officer Clingenpeel's search of appellee was directed at discovering drugs, not weapons. Therefore, the search cannot be justified under a *Terry* frisk analysis.

### Probable Cause

{¶ 31} Probable cause exists if the facts and circumstances known to a police officer warrant a prudent man in believing the offense has been committed. *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

{¶ 32} "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

{¶ 33} In order to determine whether a police officer possessed probable cause to conduct a search of an individual, the appellate court reviews the totality of the circumstances known to the officer at the time of the search. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

10.

## Exigent Circumstances

{¶ 34} Another exception to the warrant requirement is exigent circumstances, which generally include the necessity for immediate action to protect or preserve life or protect a governmental interest that outweighs the individual's constitutionally protected privacy interest. *See Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *United States v. Rohrig*, 98 F.3d 1506, 1517-1518 (6th Cir.1996).

{¶ 35} This court has held "[n]o search, even for exigent circumstances, can be conducted without probable cause. *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 Ohio B. 42, 482 N.E.2d 606." *State v. Christian*, 6th Dist. Fulton No. F-04-003, 2004-Ohio-3000, ¶ 12. This court has also held the exigent circumstances exception does not apply to misdemeanor offenses. *Id.* at ¶ 11; *State v. Reining*, 6th Dist. Wood No. WD-10-027, 2011-Ohio-1545, ¶ 29.

## Minor Misdemeanor/Search

{¶ 36} "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors." *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, syllabus. A police officer may briefly detain an individual for a minor misdemeanor offense and issue a citation, but the officer may not conduct a custodial arrest or a search of the individual, when none of the exceptions in R.C. 2935.26 apply. *State v. Bradford*, 10th Dist. Franklin No. 14AP-322, 2014-Ohio-5527, ¶ 22. Possessing less than one hundred grams of marijuana is a minor misdemeanor. R.C. 2925.11(C)(3).

11.

{¶ 37} Here, the evidence shows after properly initiating the traffic stop, Officer Clingenpeel smelled marijuana coming from the truck and found a one-hitter by Baldwin, a straw with white powder on Baldwin, two marijuana roaches in the ashtray and what appeared to be a pill by the passenger side of the truck. The officer observed marijuana flakes on appellee's shirt and pill bottles and money in appellee's pockets. Appellee was cooperative and gave no sign that he was armed or dangerous.

{¶ 38} On the video, the reason given by Officer Clingenpeel for searching appellee was the presence of marijuana flakes on appellee's shirt. At the suppression hearing, Officer Clingenpeel testified he believed he had probable cause to search appellee because appellee had marijuana residue on his shirt. No testimony was presented at the hearing that based on the officer's training or experience prescription pill bottles are used to carry illegal drugs or that pill bottles are an indicator of illegal drug possession.

{¶ 39} Based upon the totality of the circumstances known to the officer at the time of the search, we conclude Officer Clingenpeel did not have probable cause to search appellee. The officer conducted a search because appellee had marijuana flakes or residue on his shirt, which is a minor misdemeanor offense. Under *Brown* and *Bradford*, such a search is only allowed if none of the exceptions in R.C. 2935.26 apply.

{¶ 40} R.C. 2935.26 provides in pertinent part:

(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the

12.

commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

(1) The offender requires medical care or is unable to provide for his own safety.

(2) The offender cannot or will not offer satisfactory evidence of his identity.

(3) The offender refuses to sign the citation.

(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to [either appear for trial or plead guilty].

{¶ 41} Here, the only exception which could possibly apply is subsection (A)(1), that appellee was unable to provide for his own safety, because he is legally blind. However, the state did not argue this point and the evidence does not support such a finding.

{¶ 42} The record shows after appellee was directed to get out of the truck, he walked to the back passenger side of the truck then started walking toward the highway when he was guided back to the rear passenger side of the truck. There, appellee safely stood and waited for nine minutes, looking at his phone or talking on the phone, while Officer Clingenpeel attended to Baldwin and searched Baldwin's vehicle. The evidence shows during that time, appellee secured a ride. Officer Clingenpeel then approached appellee, asked if he had anything on him, handcuffed him and searched him.

13.

{¶ 43} There is no indication in the record that appellee could not or would not follow orders or was acting in such a way that one could reasonably conclude that he was unable to provide for his own safety. Officer Clingenpeel should have issued appellee a citation for possession of marijuana and allowed appellee's ride to pick him up on the highway.

{¶ 44} We therefore find Officer Clingenpeel was not justified in searching appellee for a minor misdemeanor offense. We further find the search of appellee was not justified based on exigent circumstances since this exception does not apply to misdemeanor offenses.

## Consent

{¶ 45} Police may conduct a warrantless search of an individual with the individual's voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The burden of proving voluntary consent is on the state and must be demonstrated by clear and convincing evidence. *State v. Oke*, 6th Dist. Wood Nos. WD-04-082, WD-04-083, 2005-Ohio-6525, ¶ 44. The voluntariness of the individual's consent is a question of fact to be determined from the totality of the circumstances. *Schneckloth* at 227. Consent may "not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion." *Id.* at 228. Consent to search which is given following a claim of authority is not freely and voluntarily given, but is merely an acquiescence and an acknowledgment

14.

of authority. *Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). For instance, "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion -- albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Id.* at 550.

{¶ 46} Here, the record shows appellee was not asked to give his consent to be searched. Rather, appellee challenged Officer Clingenpeel's question of whether appellee had anything on him that he was not supposed to have, by asking why he was being searched since he had done nothing wrong. When the officer responded because appellee had flakes of marijuana on his shirt, appellee denied he did. The officer asked appellee, "[D]o you have anything on you before I search you here?" It was only then that appellee replied, "Just arrest me, man. Take my shit, put me in cuffs."

{¶ 47} From the totality of the circumstances, we find the state has not demonstrated by clear and convincing proof that appellee freely and voluntarily consented to a search of his person. Officer Clingenpeel's questions and statements to appellee sent a message that appellee had no choice but to comply with the search, as the officer announced he would search appellee and acted as if he intended to search regardless of appellee's response. The officer clearly claimed the right to search without permission. Appellee's statements in response were merely a demonstration of his acquiescence and submission to authority after he was told he was going to be searched. We observe no reason, under these circumstances, for appellee to believe he had a right

15.

to object to the search.  We therefore find appellee did not voluntarily consent to be searched.

{¶ 48} Accordingly, we conclude the officer's search of appellee was unlawful and the trial court properly granted appellee's motion to suppress.  The state's sole assignment of error is not well-taken.

{¶ 49} The judgment of the Wood County Common Pleas Court is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Stephen A. Yarbrough, J. _____

_____
JUDGE

James D. Jensen, P.J. _____
CONCUR.

_____
JUDGE