[Cite as *State v. Ward*, 2017-Ohio-8141.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160560 |
| | | TRIAL NO. B-1507108 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| GENO WARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  October 11, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John D. Hill, Jr.*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Defendant-appellant Geno Ward appeals the trial court's denial of his motion to suppress. Because we hold that there was no probable cause to search Ward's vehicle, we reverse the trial court's ruling.

### Background

{¶2} The grand jury indicted Ward for carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), and improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), both fourth-degree felonies. The charges stemmed from a traffic stop on December 20, 2015.

{¶3} Ward filed a motion to suppress evidence found following a search of his vehicle, and the trial court held a suppression hearing at which the arresting officer, Corey Gould, and Ward testified. The officer testified that, at approximately 9 p.m. on the night in question, he pulled onto Ridgeway Avenue and observed Ward's car "parked at the curb of 711 Ridgeway, which is a * * * known drug trafficking area." He testified that he observed an individual stepping away from Ward's vehicle, and that, a few moments later, he initiated a traffic stop because Ward had pulled away from the curb without using his turn signal.

{¶4} The officer testified that he had been a police officer for eight years, and that he had frequently witnessed drug transactions. He testified that when he saw Ward's vehicle, he "believe[d] that [a drug transaction occurring] was a very strong possibility. Given the area and the fact, you know, there was an individual that was leaning into his car as I pulled up. That's typically how we see those things go down."

{¶5} The officer further testified: "I made contact with the defendant. Ran his information through our computer system. Found out that he was suspended

2

and that there was a warrant from the State of Kentucky that they were going to extradite for." The warrant was for nonsupport. The officer then placed Ward under arrest due to the outstanding Kentucky warrant, and, after securing Ward in his vehicle, searched the interior of Ward's vehicle "based on the arrest and the activity [the officer] had observed when [he] pulled up to Ridgeway." The officer testified that he believed drugs were in the car, and while he did not find drugs, he did find a "loaded nine millimeter semi-auto in the center console." He also testified that Ward was cooperative during the traffic stop.

{¶6} The officer testified that his cruiser's camera had videotaped the encounter, and the video was played in court. Having reviewed the video, we conclude that the officer's testimony is fully in accord with what the video depicts.

{¶7} Ward then testified that the person he was speaking to was his uncle, and that his uncle had flagged him down to ask him for money. Ward testified that he had been speaking with his uncle for a minute or two before the officer approached, and that he had given his uncle some money. Ward testified that he received nothing in exchange from his uncle.

{¶8} In denying Ward's motion to suppress, the trial court stated,

The defendant admits that there was an exchange of money. *Officer says he saw an exchange of money in what he thought was a drug deal.* And the defendant says 'I never dealt with drugs. I don't deal with drugs.' That doesn't take away from the appearance or the conclusions that the officer made. Even though the officer, according to the defendant, is wrong in those conclusions, they are reasonable.

(Emphasis added.)

3

{¶9}     Contrary to the trial court's statement, a review of the officer's testimony reveals that he never testified that he "saw an exchange of money," or that he saw any transaction.  Additionally, the video footage does not include an exchange of money or other hand-to-hand transaction.

{¶10}     Ward pleaded no contest and was sentenced to community control. He timely appealed.

### Assignment of Error

{¶11}     Ward's sole assignment of error is that "the trial court erred as a matter of law in overruling [his] motion to suppress."

### Standard of Review

{¶12}     "Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact.  We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the application of the relevant law to those facts."  (Citations omitted.)  *In re D.G.*, 1st Dist. Hamilton Nos. C-160515, C-160516, C-160517 and C-160518, 2017-Ohio-4261, ¶ 7.

{¶13}     The Fourth Amendment to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, prohibit "unreasonable searches and seizures." "Unless an exception applies, warrantless searches are per se unreasonable." *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 8 (1st Dist.). " 'Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search.' " *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 25, quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶14}    Generally, "[a]n illegal search conducted without a warrant is still illegal, even if there is probable cause." *State v. Keith*, 178 Ohio App.3d 46, 2008-Ohio-4326, 896 N.E.2d 764, ¶ 13 (2d Dist.), citing *Agnello v. United States*, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925).   "[T]he prosecution bears the burden of * * * show[ing] by a preponderance of the evidence that, under the totality of the circumstances, the warrantless search comes within one of the *defined* exceptions to the warrant clause of the Fourth Amendment."  (Emphasis added.)  *State v. Baker*, 87 Ohio App.3d 186, 192, 621 N.E.2d 1347 (6th Dist.1993).

{¶15}    The parties agree that the stop of Ward's vehicle was proper, that the search of Ward's vehicle was a warrantless search, and that the only applicable exception is the "automobile exception."

### The Automobile Exception to the Warrant Requirement

{¶16}    "[U]nder    the    automobile    exception    to    the    warrant requirement * * * police may conduct a warrantless search of an entire vehicle if the officers have probable cause to believe that they will discover evidence of a crime." *In re L.S.*, 1st Dist. Hamilton No. C-150526, 2016-Ohio-5582, ¶ 15.  "As it relates specifically to an automobile search, probable cause is 'a belief reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.' " *State v. Durham*, 2013-Ohio-4764, 999 N.E.2d 1233, ¶ 32 (12th Dist.), quoting *State v. Kessler,* 53 Ohio St.2d 204, 208, 373 N.E.2d 1252 (1978).  *See State v. Feliciano*, 115 Ohio App.3d 646, 663, 685 N.E.2d 1307 (9th Dist.1996) ("An officer has probable cause to search a vehicle if, based on the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in it.").  "Probable cause must be based upon objective facts that would justify the issuance of a warrant

by a magistrate." *State v. Jones*, 187 Ohio App.3d 478, 2010-Ohio-1600, 932 N.E.2d 904, ¶ 41 (6th Dist.), citing *State v. Welch*, 18 Ohio St.3d 88, 92, 480 N.E.2d 384 (1985).

### *Reasonable Suspicion, Probable Cause, and "High Crime" Areas*

{¶17}   Other cases involving a fact pattern similar to this one—persons leaning into cars parked in high-drug-trafficking areas—generally examined the question of whether there was "reasonable suspicion" to justify a *Terry* stop, which is a lower level of suspicion than "probable cause" to search.  *See Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, at ¶ 9, quoting *Terry v. Ohio*, 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("A reasonable suspicion represents something less than probable cause, but more than an 'inchoate and unparticularized suspicion or "hunch." ' "); *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 ("Probable cause is a stricter standard than reasonable and articulable suspicion.  * * * The former subsumes the latter.").

{¶18}   Cases where an officer had "probable cause to search" an automobile generally involve the officer smelling marijuana or other contraband upon approaching the vehicle, *e.g.*, *State v. Davenport*, 2017-Ohio-688, ___ N.E.3d ___ (2d Dist.), a drug dog indicating on the vehicle, *e.g.*, *State v. Blatchford*, 2016-Ohio-8456, 79 N.E.3d 97 (12th Dist.), or the officer observing suspicious behavior and/or contraband in plain view while conversing with the vehicle's occupants, *e.g.*, *State v. Wilson*, 3d Dist. Hancock No. 5-07-47, 2008-Ohio-2742.

{¶19}   The Supreme Court of Ohio has held that " '[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely' in determining whether an investigative stop is warranted."  *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988), quoting *United States v. Magda*, 547

F.2d 756, 758 (2d Cir.1976). However, the Ohio Supreme Court has also held that simply being in a "high crime" area is "not sufficient to justify an investigative stop. To hold otherwise would result in the wholesale loss of the personal liberty of those with the misfortune of living in high crime areas." (Citation omitted.) *State v. Carter*, 69 Ohio St.3d 57, 65, 630 N.E.2d 355 (1994). The Second Appellate District has stated that " 'acts that are essentially neutral or ambiguous do not become specifically criminal in character because they occur in a high crime area.' " *State v. Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383, ¶ 26 (2d Dist.), quoting *State v. Maldonado*, 2d Dist. Montgomery No. 13530, 1993 WL 402772, *4 (Sept. 24, 1993).

{¶20} When determining whether there was probable cause for a search, we review "the totality of the circumstances known to the officer at the time of the search." *State v. Grubbs*, 2017-Ohio-41, 80 N.E.3d 1075, ¶ 33 (6th Dist.), citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). *See Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 370, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009), quoting *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (" 'Probable cause exists where "the facts and circumstances within [an officer's] knowledge and of which [he or she] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that" an offense has been or is being committed,' and that evidence bearing on that offense will be found in the place to be searched.").

{¶21} Therefore, our review is concerned only with what the officer knew at the time he conducted the search of Ward's vehicle.

### *Probable Cause did not Support the Search of Ward's Vehicle*

{¶22}    The record reflects that the officer witnessed Ward's vehicle parked on the side of the road in a high-drug-trafficking area; a person leaning into the car window; the same person walking away from the vehicle as the officer approached; the vehicle pulling away from the curb without using a turn signal a few seconds later; the vehicle immediately pulling over when the officer initiated lights and sirens; Ward making no furtive movements during the traffic stop; and Ward complying with the officer's requests during the traffic stop. But the trial court mistakenly believed that the officer had testified that he saw an exchange of money in what he thought was a drug deal. We will not defer to the trial court's factual determinations when those findings are "clearly erroneous." *See Cincinnati v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 22-23. Therefore, the issue before us is whether, under the totality of the circumstances known to the officer—and discounting the trial court's mistaken finding of fact—the officer's warrantless search of Ward's vehicle was permitted under the automobile exception. *See id.* at ¶ 24.

{¶23}    Based on the facts known to the officer at the time of the search, there was not a "fair probability that contraband or evidence of a crime would be found in" Ward's vehicle. *See Feliciano*, 115 Ohio App.3d at 663, 685 N.E.2d 1307. The facts as testified to by the officer and as visible in the video are "essentially neutral or ambiguous," *see Ferrante*, 196 Ohio App.3d 113, 2011-Ohio-4870, 962 N.E.2d 383, at ¶ 26, and there is nothing that would merit a "reasonable belief" or "fair probability" that the officer would discover evidence of a crime. The fact that a gun was found in the car is immaterial, because "a search or seizure, illegal at inception, cannot be legitimatized by the results thereof." *State v. Williams*, 55 Ohio St.2d 82, 86, 377

8

N.E.2d 1013 (1978). The fact that Ward testified that he had provided money to his uncle is also not a factor that can be considered as this was not knowledge the officer had when he initiated the search of the vehicle.

{¶24} In the cases with a similar fact pattern to this one, the court examined only whether there was reasonable suspicion to justify a *Terry* stop. However, these *Terry* stop cases are instructive to our analysis because reasonable suspicion is a lower bar than probable cause, and if reasonable suspicion is lacking, then there can be no probable cause.

{¶25} In *State v. Coleman*, 8th Dist. Cuyahoga No. 93451, 2009-Ohio-6471, the Eighth District found that there was no reasonable suspicion to justify a *Terry* stop where, in an area of high-drug activity, the officer saw the defendant in his vehicle with two men either standing by or leaning into his car, and as the officer approached, the two men dispersed. *Id.* at ¶ 25-26. In *State v. Jones*, 70 Ohio App.3d 554, 591 N.E.2d 810 (2d Dist.1990), the Second District found that there was no reasonable suspicion to stop a vehicle where the officer observed it parked in a high-crime area with three to four persons standing around it and one person leaning into the car; upon the officer's approach, all of the people outside of the car began to walk away in different directions; and the occupants made no furtive movements. *Id.* at 556-559.

{¶26} Here, we have essentially the same facts as in the above cases: in an area of high-drug activity, the officer saw a vehicle parked near a sidewalk with a person leaning into the vehicle, and as the officer approached, the person walked away from the car. If there was no reasonable suspicion in those cases, then the "stricter" standard of probable cause could not be met under the facts of this case.

{¶27}    In light of the foregoing, the officer did not have probable cause to search Ward's vehicle.

## *Conclusion*

{¶28}    Because the totality of the circumstances known to the officer did not justify his search of Ward's vehicle, we sustain Ward's assignment of error, reverse the judgment of the trial court overruling Ward's motion to suppress, and remand this cause for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

MOCK, P.J., and MYERS, J., concur.

Please note:

This court has recorded its own entry this date.