[Cite as *State v. Showes*, 2020-Ohio-650.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180552 |
| | | TRIAL NO. B-1801398 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RECAH SHOWES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  February 26, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}  Recah Showes appeals his convictions, after no-contest pleas, for having a weapon while under a disability, carrying a concealed weapon, aggravated possession of drugs, and possession of cocaine.  In one assignment of error, Showes contends that the trial court erred in failing to suppress the gun and drugs because the stop and the pat-down were unconstitutional.  We agree that the gun and drugs should have been excluded because the officer did not have a reasonable basis to believe that Showes was armed and dangerous.

## Factual Background

{¶2}  On March 8, 2018, Recah Showes was indicted for having weapons while under a disability, carrying a concealed weapon, aggravated possession of drugs, and possession of cocaine.  He filed a motion to suppress the gun and drugs arguing that the officer did not have a reasonable articulable suspicion to stop him or to conduct a pat-down.  After the trial court overruled the motion to suppress, Showes entered no-contest pleas to all of the charges.  The trial court found him guilty and sentenced him to an aggregate prison term of 12 months' incarceration with credit for 152 days.

## The Motion to Suppress

{¶3}  Officer Alexander Berlin of the Hamilton County Sheriff's Department was the state's sole witness.  Berlin had been with the Hamilton County Sheriff's Office for two-and-a-half years as a patrol officer and had previously worked as a patrol officer at the Arlington Heights Police Department for two years.  Berlin received a dispatch to 7796 Montgomery Road at 10:50 p.m. while he was patrolling in Sycamore Township.  Two men in dark clothing, one wearing a black hat, had been seen pulling on the door of a hobby shop located on the corner of Montgomery Road

and Kenwood Road, "possibly trying to get into the business." The dispatch did not give a racial description or the time that this conduct occurred. Berlin arrived at the scene approximately two minutes later with another patrol car that drove to the back of the building.

{¶4} When Berlin pulled up at the hobby store, he saw a black male, Recah Showes, wearing a dark-colored jacket, white Cheesecake Factory pants, and a black Cheesecake Factory hat. Showes was smoking a cigarette and standing outside a bar, Tavern on the Corner, which was next to the hobby shop. Showes was the only male outside when Berlin arrived. He exited from his vehicle and ordered Showes to step over to his patrol car for questioning. As Berlin approached him, Showes distanced himself from the officer and stated, "I don't want any trouble. I don't want to go back to jail. I'm going back to jail." Showes attempted to walk toward the bar as Berlin approached. As Berlin got closer, he smelled marijuana on Showes.

{¶5} After he made contact with Showes, Berlin asked him if he had anything on him because of the marijuana odor, and Showes became nervous. Berlin informed him that he was being detained and placed Showes's hands behind his back. Berlin conducted a pat-down and felt what he believed to be a gun in Showes's right pocket. Berlin placed him in handcuffs and retrieved a loaded .38-caliber handgun from his pocket. Berlin placed him under arrest.

{¶6} During cross-examination, Berlin testified that Showes was not engaged in any activity that suggested he attempted to break into the hobby shop, and he was not carrying any tools that could be used to break into the store. Showes had informed him that he been in the bar, and Berlin acknowledged that smoking

3

was not permitted in the bar. Berlin questioned him about the potential robbery, and Showes informed him that he had not seen anyone near the shop.

{¶7} Berlin further testified that Showes did not try to run from him, threaten him, or advance in anyway. When asked if he had been in fear for his safety, Berlin explained that when he initially ordered Showes to approach, he had placed his hands in his pockets a few time. Berlin expounded, "[s]o through my training that's what we do when we pat someone down. Put them at a disadvantage."

{¶8} After hearing Berlin's testimony, the trial court overruled the motion, finding the stop and the pat-down constitutional. Showes entered no-contest pleas to all of the charges, and now appeals, arguing that the trial court erred in failing to exclude the gun and the drugs.

### Standard of Review

{¶9} "Our review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the application of the relevant law to those facts." (Citations omitted.) *State v. Ward*, 2017-Ohio-8141, 98 N.E.3d 1257, ¶ 12 (1st Dist.). Here, the parties do not disagree on the factual record, so we review the trial court's legal determination de novo. *See State v. Gilmore*, 5th Dist. Stark No. 2009 CA 00283, 2010-Ohio-4631, ¶ 35.

{¶10} There are two points at which we could find the search unconstitutional. If we determine that the initial stop was unconstitutional, then we must conclude that the gun and drugs should have been suppressed. Even if we determine that the initial stop was lawful, then we must ascertain whether the pat-down was constitutional. In this case, we find that the pat-down was

4

unconstitutional, and therefore, we will not address whether the initial stop was permissible.

The Pat-Down was not Supported by Specific, Articulable Facts

{¶11} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 14, Article I, of the Ohio Constitution prohibit the government from conducting warrantless searches rendering them per se unreasonable unless an exception applies. *See Ward* at ¶ 13, citing *State v. Bacher*, 170 Ohio App.3d 457, 2007-Ohio-727, 867 N.E.2d 864, ¶ 8 (1st Dist.). "Evidence is inadmissible if it stems from an unconstitutional search or seizure." *Wong Sun v. United States*, 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The state bears the burden of establishing the validity of a warrantless search. *Ward* at ¶ 13.

{¶12} Under *Terry*, a police officer may conduct a limited pat-down of a person if the officer reasonably believes that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others." *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993), quoting *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer is permitted to take reasonable steps to assure the safety of himself and others. *Terry* at 24. To justify a pat-down, an officer must have a reasonable, objective basis to conduct the frisk. *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). To that end, an officer must articulate specific facts which would lead a reasonable person to conclude that the person being investigated is armed and dangerous. *Evans* at 413.

{¶13} Here, Berlin was responding to a dispatch about two men "possibly

trying to get into [a Sycamore Township] business," as opposed to an actual crime in progress such as shots fired or drug trafficking. There was no information regarding the time that this alleged conduct occurred. Although the dispatch described the clothing the men were wearing, the description of the two men did not include the race, age, height, or weight of either man. There was no allegation that either man had a gun or any type of weapon. Notably, Berlin did not testify that the hobby shop in Sycamore Township was located in a high-crime area.

{¶14} When Berlin encountered Showes, who was wearing a Cheesecake Factory employee uniform, he was outside of the bar smoking a cigarette. As Berlin conceded, Showes's actions before Berlin stopped him demonstrated no grounds to suspect he was committing a crime.

{¶15} The state argued that Showes exhibited three suspicious behaviors to justify the pat-down: (1) he attempted to distance himself when Berlin initially ordered him to step over to the patrol car; (2) he placed his hands in his pockets; and (3) he became nervous after Berlin began to interrogate him. We first note that Berlin never ordered Showes to remove his hands from his pockets, or explained why placing his hands in his pockets suggested that he was armed and dangerous. Moreover, he never testified that his experience and training led him to believe that one's hands in the pockets is indicative of the presence of a weapon. Accordingly, we give no weight to the fact that Showes placed his hands in his pockets. *See United States v. Monsivais*, 848 F.3d 353, 359 (5th Cir.2017), quoting *United States v. Williams*, 731 F.3d 678, 689 (7th Cir.2013) (concluding that "the simple fact that one's hands are in one's pockets is..... of little value. If one were to drive down any given street, it is likely that an uncountable number of citizens would have their

6

hands in their pockets.").

{¶16} After Berlin detained Showes and began questioning him, Berlin became nervous. His nervousness was not coupled with furtive movements or any evasive actions or attempts to flee. Showes's nervousness upon questioning "is an unreliable indicator" of dangerousness. *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir.2004). *See United States v. Wilson*, 506 F.3d 488, 495-496 (6th Cir.2007) ("Nervous behavior, standing alone, is not enough to justify a *Terry* search."); *United States v. Henry*, 429 F.3d 603, 613 (6th Cir.2005) ("[W]e have repeatedly discounted the value of nervousness in the reasonable-suspicion calculus."); *United States v. McKoy,* 428 F.3d 38, 40 (1st Cir.2005) (explaining that "[n]ervousness is a common and entirely natural reaction to police presence").

{¶17} Showes's attempts to distance himself when initially ordered to stop and walk toward the officer also did not indicate that he was armed and dangerous. His initial attempts to distance himself and reenter the bar merely show that his encounter with Berlin was not consensual. Simply walking away from the police does not give rise to reasonable suspicion. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Furthermore, Berlin confirmed that Showes did not attempt to leave the scene after their initial contact. Considered together, these factors were not sufficient to warrant a belief that Showes was armed and dangerous. *See United States v. Ford*, 333 F.3d 839, 842 and 845 (7th Cir.2003) (Despite the fact that the defendant appeared nervous, looked around, reached for his breast pocket, and started to back away when the officer ordered him to step forward, the court held this "was insufficient to create a reasonable suspicion that would justify a protective pat-down.").

**{¶18}** Finally, Berlin admitted that he asked Showes if he had anything on him solely because he smelled marijuana. At no time did Berlin ask Showes if he was carrying a gun or any other type of weapon. To explain why he conducted a pat-down, Berlin stated that he was trained to conduct a pat-down to put the suspect "at a disadvantage." However, "[a]n individual may not be frisked on a belief that he possesses drugs; the belief must be that the individual possesses a weapon." *State v. Whitfield*, 7th Dist. Mahoning No. 99 CA 111, 2000-Ohio-2596, *4. Considering Berlin's testimony and all of the relevant factors, we conclude that the pat-down of Showes not supported by a reasonable suspicion that he was armed and dangerous. Accordingly, we sustain the assignment of error.

## Conclusion

**{¶19}** Finding merit to Showes's assignment of error, we reverse the judgment of the trial court overruling his motion to suppress, reverse the convictions based on the improper evidence, and remand this cause for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.