[Cite as *State v. Harris*, 2024-Ohio-1025.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230379 |
| | | TRIAL NO. B-2105512 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| MARKALO HARRIS, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: March 20, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *William R. Gallagher*, for Defendant-Appellant.

**Zᴀʏᴀs, Presiding Judge.**

{¶1}   Markalo Harris appeals his convictions for possession of cocaine, carrying a concealed weapon, improperly handling a firearm in a motor vehicle, and having a weapon while under a disability.  In two assignments of error, Harris argues that the trial erred by overruling his motion to suppress the drugs and firearm found in his vehicle because the trial court's factual findings were against the manifest weight of the evidence and his detention after a traffic stop was unreasonable.

## Factual Background

{¶2}   Harris was indicted for trafficking in cocaine, possession of cocaine, carrying a concealed weapon, improperly handling a firearm in a motor vehicle, and having a weapon while under a disability.  Harris filed a motion to suppress all evidence, arguing the officers did not have reasonable suspicion to detain him.

{¶3}   At the hearing on the motion, Officer Mark Bode, an officer with the Cincinnati Police Department ("CPD"), testified that on October 27, 2021, he was assigned to the Crime Gun Intelligence Center.  On that day, Bode was conducting plainclothes surveillance in Westwood, a high-crime area.  While Bode was driving, he observed an imprint of a firearm in the front pocket of Harris's bright yellow hoodie and the handle of a gun protruding from the pocket when Harris crossed the street in front of him.

{¶4}   Bode contacted his unit via a channel reserved solely for his unit, requested additional officers to respond to McHenry Avenue, and shared his observations of Harris and his description.  Officer Broering responded that he had recently been involved in a case with Harris, and that Harris was under a disability from that prior case.  Bode intended to stop Harris because he was a convicted felon in possession of a firearm.

2

{¶5} While waiting for the uniformed officers to arrive, Bode parked about 75 feet away and continued to watch Harris for approximately 15 minutes. Harris repeatedly walked from a BMW parked in a yard on McHenry Avenue to a house across the street. Harris met with individuals in front of the house but did not enter the house. The BMW was registered to Harris. Bode believed Harris's actions were indicative of drug trafficking. Bode testified that he could still see the gun in his pocket from 75 feet away using binoculars.

{¶6} Before the other officers arrived, another car pulled up near the BMW. Harris opened the driver's door of the BMW and bent over into the driver's compartment for less than ten seconds. Then Harris entered the passenger seat of the car that had just arrived, and the car left. Bode could not see if the gun was still in Harris's pocket.

{¶7} Bode relayed this information to his unit, and uniformed cars followed the car and initiated a traffic stop for a window-tint violation. Bode remained on the scene while talking to Officers Chiappone and Condon, who had stopped the vehicle. When the officers reported that they did not find a gun, Bode told them to read Harris his *Miranda* rights and tell him that plainclothes officers had observed him with a gun going in and out of the BMW.

{¶8} Chiappone spoke with Harris and told the unit that Harris stated the gun was under the floor mat on the driver's side of the BMW. The keys to the BMW were taken from Harris and transported to the BMW. The firearm was recovered under the floor mat, and drugs were found in the driver's compartment, indicative of trafficking.

{¶9} On cross-examination, Bode testified that he did not see money exchange hands but saw small items being exchanged between Harris and the individuals in front of the house. Bode reviewed video from Chiappone's body-worn camera and confirmed that Chiappone told Harris that he was observed placing the gun in the BMW. Bode told Chiappone to tell Harris that he saw him put the gun in the BMW even though he did not see Harris put the gun in the car. Harris was detained until the search of the BMW was finished. Ten to 15 minutes elapsed from the time the traffic stop was initiated until the officers arrived with the keys to the BMW. Bode further testified that the communications over the unit's channel were not recorded.

{¶10} Officer Thomas Chiappone testified that he received a call from Bode on the encrypted channel that Harris had a gun. He also learned from Broering that Harris was under a disability. The original plan was for Chiappone to drive to the BMW parked on McHenry Avenue. Chiappone was in a uniform and driving a marked police cruiser. After Harris left the scene in another vehicle, Chiappone and his partner Condon pulled over that vehicle. Chiappone approached the passenger's side of the car. Because there was a gun involved, Chiappone used a Stop Stick to prevent the car from fleeing and had his firearm drawn.

{¶11} For safety reasons, Condon and Chiappone removed the driver and Harris from the car and placed them in handcuffs. Condon saw marijuana in the vehicle, so they searched both individuals and the car, but did not find a gun. Chiappone found the BMW keys in the car where Harris had been sitting.

{¶12} During the stop, Chiappone told Harris why he was detained and read him his *Miranda* rights. Harris told him that the gun belonged to his girlfriend and was in the BMW. Chiappone removed Harris's wallet from his pocket and took his

4

driver's license to confirm his identity and ensure he had the correct person. Chiappone also needed the information for the contact card that is required to be completed for every traffic stop.

{¶13} Chiappone confirmed that he told Harris that he was seen putting the gun in the BMW, and that they had to check the BMW before releasing Harris. A sergeant drove the BMW keys to the car while Chiappone remained with Harris. After the gun was found, Chiappone drove Harris to McHenry Avenue.

{¶14} When the traffic stop occurred, Chiappone communicated the stop on the district-wide channel. He reported, "unknown occupants," meaning he did not know how many individuals were in the car due to the dark tint on the windows or the driver's identity.

{¶15} After Chiappone testified, Harris admitted a flash drive containing the video from Chiappone's body-worn camera. The trial court admitted the exhibit without objection and represented that she would play the video on her own computer to hear it better.

{¶16} During closing arguments, Harris challenged the credibility of the officers' testimony. Specifically, he argued that there was no proof that they knew Harris's identity, and that he was a convicted felon when the stop was initiated. Without that knowledge, the officers had no legal justification to detain, search, and question Harris.

{¶17} The court overruled the motion after reviewing the transcript and video because the officers had reasonable suspicion to believe there was a gun, and once Harris admitted the gun was in the BMW, the search of the BMW was permissible.

Upon Harris's request, the trial court issued a written decision denying the motion to suppress.

**{¶18}** The court found Bode's testimony that he observed the gun handle in Harris's pocket when he walked in front of him to be credible. The court also believed that Bode knew from a fellow officer that Harris had a disability that prevented him from legally possessing a gun. These facts combined to give the officers probable cause to stop Harris and search for the gun. The court did not believe that Bode observed the imprint of the gun on the hoodie or that he observed the gun while parked 75 feet away.

**{¶19}** Shortly after being Mirandized, Harris voluntarily admitted that there was a gun under the floor mat of the BMV's driver side, giving the officers probable cause to search the BMW. The trial court concluded that the search and subsequent seizure of the gun and drugs from the BMW did not violate Harris's Fourth Amendment rights.

### Law and Analysis

**{¶20}** Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. *State v. Showes*, 1st Dist. Hamilton No. C-180552, 2020-Ohio-650, ¶ 9. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "We must accept the trial court's findings of fact if they are supported by competent and credible evidence, but we review de novo the application of the relevant law to those facts." *Showes* at ¶ 9.

**{¶21}** Harris contends that the trial court's factual findings were against the manifest weight of the evidence because Bode's testimony that Broering provided

Harris's identity and that he was under a disability was not credible. Harris further argues that the officers did not have a reasonable belief that Harris was committing a crime by having a gun in his pocket because Bode's testimony was not credible.

{¶22} The record provides competent and credible evidence to support the court's findings. Both Chiappone and Bode testified that Broering identified Harris and informed the unit that Harris was under a disability prior to the stop of the vehicle. The trial court expressly found Bode's testimony on those matters to be credible. As the reviewing court, we accept the trial court's determination because the court was in the best position to evaluate his credibility. *See Burnside* at ¶ 8.

{¶23} Accordingly, we overrule the first assignment of error.

{¶24} In his second assignment of error, Harris argues that the police violated his Fourth Amendment right to be free from unreasonable searches and seizures when they detained him in handcuffs without reasonable suspicion that he had committed a crime.

{¶25} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit unreasonable searches and seizures. *State v. Ward*, 2017-Ohio-8141, 98 N.E.3d 1257, ¶ 13 (1st Dist.). A law enforcement officer may briefly detain an individual when he or she has reasonable and articulable suspicion that the individual may be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer must be able to cite specific, articulable facts, which, taken together with the rational inferences that can be drawn from those facts, reasonably warrant the intrusion. *Id.* The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances as seen through the eyes of a reasonable and

cautious police officer on the scene, guided by his experience and training. *State v. Bobo*, 37 Ohio St.3d 177, 179-180, 524 N.E.2d 489 (1988).

{¶26} Harris argues that the officers had no reasonable suspicion or probable cause to detain him after determining there was no gun on his person or in the car.

{¶27} Bode observed Harris with a gun and knew that he had a disability that prohibited him from having a gun. Chiappone confirmed that Harris had a disability shortly after initiating the traffic stop. Thus, the officers had a reasonable suspicion that Harris had committed a crime. *See State v. O'Neal*, 1st Dist. Hamilton No. C-220541, 2023-Ohio-3268, ¶ 13 (holding that the officer's observation that defendant possessed a firearm was a fact "sufficient to create reasonable suspicion that [defendant] may have been committing a weapons-possession offense and to justify an investigatory stop"). The officers also had probable cause to believe that Harris committed the offense of having a weapon while under a disability. Probable cause exists when, based on the totality of the circumstances, "the arresting officer, at the time of the arrest, possesses sufficient information that would cause a reasonable and prudent person to believe that a criminal offense has been or is being committed." *State v. Acoff*, 1st Dist. Hamilton Nos. C-160867 and C-160868, 2017-Ohio-8182, ¶ 11, quoting *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 39. Thus, the officers did not violate the Fourth Amendment in detaining Harris to inquire about the gun.

{¶28} We overrule the second of assignment of error.

## Conclusion

{¶29} Having overruled Harris's two assignments of error, we affirm the trial

8

court's judgment.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.